<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                      :

JANE ADKINS, ET AL.,          :
                      :

      Plaintiffs,         :
                      :

v.                       :     Civil Action No. 09-1123 (SDW)
                      :

JOHN B. SOGLIUZZO, ET AL.,   :     **OPINION**
                      :

      Defendants.      :
_____:

**<u>WIGENTON, District Judge</u>:**

This matter comes before the Court upon the following Motions: the Motions for Summary Judgment filed by Defendant TD Bank N.A. ("TD Bank") (Doc. Nos. 238, 240); the Motion for Summary Judgment filed by Haven Savings Bank ("Haven") (TD Bank and Haven are collectively the "Banks") (Doc. No. 239); the Motion for Summary Judgment filed by Defendant L. Gaye Torrance ("Torrance") (Doc. No. 242); the Motion for Partial Summary Judgment and Cross-Motion to Strike filed by Defendant John Sogliuzzo ("Sogliuzzo") (Doc. Nos. 244, 246); the Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment filed by Plaintiff Jane Adkins ("Adkins"). (Doc. Nos. 245, 256.)[1]

All of the foregoing Motions are opposed, and the Court has considered them without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332.

---

[1] Deutsche Bank Alex Brown did not file a motion for summary judgment when the other banks that are listed filed their motion papers.

For the reasons that follow, the Banks' Motions for Summary Judgment will be **GRANTED**; Torrance's Motion for Summary Judgment will be **GRANTED IN PART AND DENIED IN PART**; Sogliuzzo's Motion for Partial Summary Judgment will be **GRANTED IN PART AND DENIED IN PART**, and his Cross-Motion to Strike will be **GRANTED**; and Adkins' Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment will be **DENIED**.

## I.  BACKGROUND

Jane P. Sogliuzzo ("Jane") and Mary T. Grimley ("Mary") are deceased.  (Third Amended Compl. ("Compl.") ¶¶ 72, 108, Doc. No. 214).[2]  Jane and Mary were first cousins.  (Id. at ¶¶ 29.)  Near the end of their lives, Jane and Mary lived in separate apartments in a house owned by Jane at 1228 Bloomfield Street in Hoboken, New Jersey (the "Hoboken House").  (Id. at ¶¶ 39, 50.)

Adkins is Jane's daughter and therefore Mary's cousin.  (Id. at ¶ 32.)  Defendant John B. Sogliuzzo ("Sogliuzzo") is Jane's son and therefore also Mary's cousin.  (Id.)  Torrance is Sogliuzzo's wife.  (Id. at ¶ 4.)  Mary was predeceased by her husband and only child.  (Id. at ¶¶ 24.)  Jane was predeceased by her husband, Walter Sogliuzzo, and one of her three children, W. Gerald Sogliuzzo.  (Id. at ¶¶ 77, 93.)  Jane and Mary were survived by Adkins and Sogliuzzo, both of whom are beneficiaries to their estates.  (Id. at ¶¶ 172, 198.)  Sogliuzzo, who is an attorney, was named as an executor for the wills of both Jane and Mary.  (Id. at ¶¶ 74-75, 124-126.)

---

[2]  Where illustrative background factual allegations do not appear disputed, the Court will cite to Adkins' operative Third Amended Complaint.

Prior to her death in 2008, Jane maintained a checking account and various savings accounts and certificates of deposit at Hudson United Bank and TD Banknorth, which are both predecessors-in-interest of TD Bank. (TD Bank R. 56.1 Stm't at ¶¶ 1, 3, 4; Doc. No. 238.)[3] Prior to her death in 2006, Mary maintained accounts at Haven. (Haven R. 56.1 Stm't at ¶¶ 1-2; Doc. No. 239.) It is undisputed that both Adkins and Sogliuzzo signed Jane's name on checks drawn upon the TD Bank account during roughly the decade prior to her death in 2008. (TD Bank R. 56.1 Stm't at ¶¶ 6-7, 17.) It is further undisputed that Sogliuzzo withdrew money from Mary's Haven accounts, and redeemed certain of Mary's United States Savings Bonds from Haven during the several years that preceded her death in 2006. (Haven R. 56.1 Stm't at ¶¶ 8-9.) Lastly, it is undisputed that Torrance received a check from Mary prior to her death for $20,000 dated February 10, 2005. (Torrance Mot. Br., Doc. No. 242; Adkins Torrance Opp'n Br., Doc. No. 252.)

On March 13, 2008, Jane's will was probated by Sogliuzzo. (Adkins Counter R.56.1 at ¶ 54, Doc. No. 251.) At the time Jane's will was probated, the only substantial asset of the estate was the Hoboken House. (Id. at ¶ 55.) On September 23, 2008, Adkins sued Sogliuzzo for undue influence in the Superior Court of New Jersey, Chancery Division, Probate Part, Hudson County (the "State Court Case"). (Sogliuzzo R. 56.1 at ¶ 8.) In the State Court Case, Adkins alleged that Sogliuzzo had exerted undue influence over the creation and management of an account Jane maintained at Deutsche Bank Alex Brown. (Id. at 8.) On July 24, 2009, after Sogliuzzo had invoked his Fifth Amendment rights in the State Court Case, the Honorable Thomas P. Olivieri, then Presiding Judge, Superior Court, Somerset County, struck Sogliuzzo's

---

[3]  Throughout this Memorandum Opinion, unless otherwise noted, citations to the R. 56.1 Statements or Counter Statements will refer to the corresponding paragraphs of the respective submissions.

answer based upon his unresponsiveness, and default was entered against Sogliuzzo. (Tr. of 7/24/09 Hr'g, Doc. No. 244, Ex. C.) Thereafter, on February 6, 2012, following proof hearings on various dates throughout 2011 and 2012, Judge Olivieri found that Sogliuzzo had exerted undue influence over Jane. (Tr. of 2/6/12 Hr'g, Doc. No. 244, Ex. D; Olivieri Order 2/23/12, Doc. No. 244, Ex. F.)

Based upon that finding, on February 23, 2012, Judge Olivieri issued a Final Judgment "in favor of the Estate [of Jane] and against John Sogliuzzo in the amount of $520,414." (Olivieri Order 2/23/12.) Notably, that Final Judgment articulated the following component parts: $224,436 related to transfers and accrued interest from Jane's Alex Brown account; $216,313 related to "checks made payable to John Sogliuzzo or his law practice or the Pingry School" and accrued interest thereon; and $61,150 related to transfers and accrued interest from "unaccounted for withdrawals from the savings accounts of Jane Sogliuzzo." (Id.) Judge Olivieri also awarded nearly $200,000 in legal fees and costs to various law firms. (Id.) At the time the parties' present Motions were filed, appeals from Judge Olivieri's February 23, 2012 Final Judgment filed by both Sogliuzzo and Jane's estate were pending. (Sogliuzzo R. 56.1 at ¶ 18.)[4]

Based generally upon the foregoing factual landscape, Adkins filed the initial complaint that gave rise to this case on March 13, 2009. (Doc. No. 1.) Subsequently, Adkins amended her complaint twice, and Adkins' Third Amended Complaint (filed January 13, 2012) forms the operative pleading in this case. (Compl., Doc. No. 214.) The Third Amended Complaint

---

[4] A similar action was filed against Sogliuzzo related to the estate of Mary in the Superior Court of New Jersey, Chancery Division, Probate Part, Hudson County, but that matter has been stayed pending resolution of this case. (Velazquez Order 9/3/12, Doc. No. 244.)

contains thirty-six discrete counts purportedly based upon New Jersey statutory and common law causes of action against at least six separate named defendants. (See Compl. ¶¶ 32-61.) Following voluminous discovery, various parties filed their present dispositive Motions in December 2012, and those Motions became fully briefed in April 2013. The Court's discussion of the relevant issues is provided below.

## II. DISCUSSION

### A. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant, who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather, must determine whether there is a genuine issue as to a material fact. Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or

suspicions' to show the existence of a genuine issue." Podobnik v. United States Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 323.

Additionally, because the Court's jurisdiction over this case is based upon the parties' diversity of citizenship under 28 U.S.C. § 1332, the Court will apply the substantive law of New Jersey to decide the parties' present Motions. See Chin v. Chrysler LLC, 538 F3d. 272, 278 (3d Cir. 2008) (citing Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938)).

### B. Application

#### 1. The Banks' Motions

In support of its present Motion, TD Bank urges the Court to restyle Adkins' New Jersey common law causes of action against it for negligence, gross negligence, and breach of fiduciary duty, as claims under the U.C.C. (TD Bank Mot. Br., Doc. No. 238.) Haven, on the other hand, argues that it is entitled to summary judgment on the same three causes of action because, under New Jersey common law, Haven owed no duty to Adkins. For her part, Adkins has filed a Cross-Motion that seeks summary judgment against Haven.[5] For the following reasons, this Court concludes that Haven's argument is dispositive, and as a matter of law, neither of the Banks owed Adkins any duty in this case. Therefore, summary judgment is appropriate for the Banks on all of Adkins' claims.

---

[5] Adkins submitted a one-page "Notice of Cross-Motion for Partial Summary Judgment Against Haven Savings Bank", which was not filed as a formal motion, and which relies upon Adkins' arguments in opposition to Haven's Motion. (Adkins' Not., Doc. No. 256.) Adkins' informal Cross-Motion will be resolved in the context of the Banks' motions.

The Court begins by noting that "the party who brings a suit is master to decide what law he will rely upon." <u>Fair v. Kohler Die & Specialty Co.</u>, 228 U.S. 22, 25 (1913) (Holmes, J.). Stated differently, under the "'well-pleaded complaint rule'" in federal court, a plaintiff is "'the master of the claim.'" <u>Mitsui O.S.K. Lines, Ltd. v. Evans Delivery Co., Inc.</u>, 2013 WL 247271 at * 2 (D.N.J. June 10, 2013) (Debevoise) (quoting <u>Catepillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987)).

Often articulated in the context of jurisdiction, the foregoing axiom is relevant here, where Adkins has chosen, over the course of three amended complaints to exclusively lodge New Jersey common law claims that sound in negligence against the Banks. Indeed, within the context of the present Motions, Adkins has steadfastly argued that the stated claims against the Banks present triable issues of fact. As such, this Court will apply the relevant summary judgment standard to Adkins' claims as they have been repeatedly pled – as tort claims under New Jersey common law.

In their present Motions, both Adkins and the Banks appropriately identify and discuss the New Jersey Supreme Court's decision in <u>City Check Cashing, Inc. v. Mfrs. Hanover Trust Co.</u>,166 N.J. 49 (2001). In <u>City Check</u>, the Court considered "[h]ow a duty can arise in the banking context, outside of the scheme provided by the U.C.C." – the precise threshold question presented by the Banks' Motions. <u>Id.</u> at 59. The <u>City Check</u> Court stated that, "a common law duty, in fact, may arise and that its breach may be actionable in spite of the existence of the [U.C.C.]." <u>Id.</u> (citations omitted). Whether or not a duty exists, however, "is a matter of law to be decided by the court." <u>Id.</u> (citations omitted). Further, where an action is based upon "nonfeasance", "'it is necessary to find some definite relation between the parties, of such a character that social policy justifies the imposition of a duty to act.'" <u>Id.</u> (citing W. Page Keeton

et al., Prosser & Keeton on Torts Section 56 at 374 (5th ed. 1984). Generally, "courts have recognized tort liability of a financial institution where a special relationship has been established from which a duty can be deemed to flow." Id. (citation omitted). Thus, "unless the facts establish a special relationship between the parties created by agreement, undertaking or contact that gives rise to a duty", a New Jersey common law tort claim cannot stand. Id. at 62.[6]

Applying the foregoing standard to the present Motions, Adkins' claims against the Banks plainly fail as a matter of law. First, Adkins' tort claims against the Banks for negligence, gross negligence, and breach of fiduciary duty are all unquestionably based upon the alleged "nonfeasance" of the Banks. Adkins alleges in the Third Amended Complaint that TD Bank's tort liability arises from its cashing and clearing of checks from Jane's account that were signed/forged by Sogliuzzo, without having a Power of Attorney for Sogliuzzo on file. (Compl. at ¶¶ 374-391; Doc. No. 214.) Similarly, Adkins alleges that Haven's tort liability arises from its failure to take action regarding checks payable to Sogliuzzo and others drawn from Mary's account, and the redemption of Mary's savings bonds. (Compl. at ¶¶ 400-422; Doc. No. 214.) Thus, on the face of the Third Amended Complaint, each of Adkins' causes of action against the Banks expressly and exclusively allege "nonfeasance," the Banks' failure to act or to do what should be done.

Pursuant to City Check, tort liability against the Banks can only exist "where a special relationship has been established from which a duty can be deemed to flow." City Check, 116 N.J. at 59. As noted, such a "special relationship" can be "created by agreement, undertaking or

---

[6] Regarding the City Check case, Adkins has failed to persuade this Court that the New Jersey Supreme Court's determinations in that decision should not be applied in this case. 166 N.J. 49; see Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803) (Marshall, CJ) ("It is emphatically the province and duty of the judicial department to say what the law is.").

contact that gives rise to a duty." Id. at 62. In this case, discovery has failed to unearth any facts that could reasonably suggest the existence of such a "special relationship" between Jane and TD Bank, or Mary and Haven Bank. Indeed, Adkins' Third Amended Complaint does not even allege the existence of such a "special relationship."

Notably, Adkins acknowledges that she was never a customer of Haven. (Haven R. 56.1 Stm't at ¶ 10.) Although she purports to dispute TD Bank's factual assertion that "TD Bank has no relationship with [her]", Adkins has not alleged in the Third Amended Complaint that she has ever been a customer of TD Bank, nor did she so state in her Counter R. 56.1 Statement filed in opposition to TD Bank's present Motion. (Doc. Nos. 214, 255, 260.) Further, nowhere in the Third Amended Complaint does Adkins allege that the basic relationship between either TD Bank and Jane, or Haven and Mary, transcended that of service provider and customer. (Doc. No. 214.) Similarly, in her respective Counter R. 56.1 Statements filed in opposition to the present Motions, Adkins has not stated, nor has she presented any evidence that might support the transcendence of the relationship between either Jane or Mary and the Banks. (Doc. Nos. 255, 260.)

Instead, Adkins' allegations in the Third Amended Complaint paired with the facts adduced in discovery compel this Court's determination that, as a matter of law, Jane and Mary were simply customers of the Banks, and that no "special relationship" existed. As such, the Court concludes, that the Banks owed no duty to Jane and Mary. Axiomatically, because no "special relationship" existed between Jane and Mary and the Banks, a derivative relationship cannot exist between Adkins, as a mere beneficiary of Jane and Mary's estates, and the Banks. Therefore, the Banks are entitled to summary judgment on all of Adkins' claims.

While this Court has concluded no duty existed between the Banks and Adkins, the Court also notes that the arguments put forth by TD Bank under the U.C.C. could also, in large part, form the basis for the Court's adjudication of TD Bank's Motion. Adkins does not legitimately dispute that the checks and the certificates of deposit at issue fall under the U.C.C. Instead, Adkins' purports to dispute the U.C.C.'s applicability to the withdrawal slips at issue for accounts for accounts 599, 586, 338 and 339.[7] (Adkins TD Bank Opp'n Br. 4-6, Doc. No. 259.) Adkins' arguments are not persuasive, for as TD Bank correctly notes, any reasonable construction of the term "Item" in <u>N.J.S.A.</u> 12A:4-104(a)(9), must necessarily encompass a certificate of deposit, which by its very nature is a "written instruction to pay money signed by the person giving the instruction." (TD Bank Reply Br. 8, Doc. No. 274.) The U.C.C., therefore, could be applied to all of Adkins' claims against TD Bank. <u>See</u> <u>Psak, Graziano, Piaseki & Whitelaw v. Fleet Nat. Bank</u>, 390 N.J. Super. 199, 205 (App. Div. 2007) (describing the U.C.C.'s scope and liberal construction). If the U.C.C. were applied, at least three of its provisions would bar nearly all of Adkins' claims as a matter of law.

First, the U.C.C.'s Statute of Repose, which expressly disregards any "care or lack of care of either the customer or the bank", bars claims based upon unauthorized payment or alteration that are not reported within a year after the "statement or items are made available to the customer." <u>N.J.S.A.</u> 12A: 4-406(f). Here, while TD Bank has provided evidence of bank statements issued to Jane for the subject accounts, there is absolutely no evidence in the record that Jane timely notified TD Bank or its predecessors of any anomaly. (<u>See</u> Judge Certification Exs. F-L, Doc. No. 238.)

---

[7] The last three digits of account numbers are referred to in this Opinion for clarity.

Second, Adkins does not expressly dispute that <u>N.J.S.A.</u> 12A:3-118(g), the U.C.C.'s general three-year statute of limitations, bars all subject transactions that took place more than three years prior to the date the initial complaint in this case was filed for Jane's 660 checking account, and in accounts 259, 301, 417 and 948.  Indeed, TD Bank has provided undisputed evidence, in the form of schedules produced by Adkins as part of her Answers to Interrogatories, which indicate most of the subject transactions in those accounts occurred more than three years prior to the filing of this case.  (<u>See</u> Judge Certification Ex. Q, Doc. No. 238.)

Third, Adkins similarly does not expressly dispute TD Bank's assertion that any claims related to the certificates of deposit at issue for accounts 599, 586, 338 and 339 are time-barred by the plain language of <u>N.J.S.A.</u> 12A:3-118, which establishes a six-year statute of limitations for certificates of deposit.  (Adkins Opp'n Br., Doc. No. 259.)

Lastly, Adkins' omnibus argument that any of the U.C.C.'s time-bars are inapplicable or should be tolled is unsupported by New Jersey Law.  <u>See</u> <u>Psak</u>, 390 N.J. Super. at 206-207 (citing <u>New Jersey Lawyers' Fund for Client Protection v. Pace</u>, 186 N.J. 123 (2006)) (noting the inapplicability of the so-called "discovery rule" within the context of the U.C.C.).

Therefore, summary judgment for TD Bank under various provisions of the U.C.C. would also be appropriate on nearly all of Adkins' claims against TD Bank.

## 2. Res Judicata: Sogliuzzo

In his Motion for Partial Summary Judgment, Sogliuzzo argues that the following claims lodged against him in the Third Amended Complaint are barred by the doctrine of res judicata: Undue Influence (Count Nine); Conspiracy to Commit a Tort (Count Thirteen); Fraudulent Concealment (Count Twenty); Intentional Fraud (Count Twenty-One); Breach of Fiduciary Duty (Count Twenty-Two); Punitive Damages (Count Twenty-Three); Elder Abuse (Count Twenty-

Four); Wasting Another's Property or Inheritance (Count Twenty-Six); and Conversion as to Jane (Count Twenty-Eight). (Doc. No. 244.) In support of that argument, Sogliuzzo asserts that the doctrine of res judicata forecloses Adkins from pursuing these claims based upon the Final Judgment issued by the Honorable Thomas P. Olivieri, on February 23, 2012, in the Superior Court of New Jersey, Chancery Division, Probate Part, Hudson County (hereinafter the "Final State Judgment"). (See Olivieri Order 2/23/12.)

The applicable legal standard regarding res judicata, or claim preclusion, is well forged. In this District, under New Jersey law, in order for an earlier judgment to preclude a subsequent claim:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

Tagayun v. Citibank, 2006 WL 5100512 at * 4 (D.N.J. June 9, 2006) (citations omitted). With regard to the first requirement, "the rule in New Jersey is that a default judgment is a valid and final adjudication on the merits and therefore has res judicata effect barring future litigation." Id. (citation omitted). With regard to the second requirement, privity can exist among "parties and non-parties whose relationship as to the earlier litigation are 'close and significant' . . . ." Id. at *5 (citations omitted). Further, "such a relationship has sometimes been explained as one where the actual party can be said to have been either a 'virtual representative' of the non-party or the non-party can be said to have truly controlled the litigation." Id. (citation omitted).

In this case, the Court concludes that the first and second requirements of res judicata are clearly established with regard to the Final State Judgment. First, the Final State Judgment was undisputedly a default judgment, and as noted above, in New Jersey a default judgment is

considered "a valid and final adjudication on the merits and therefore has res judicata effect." (See Id.) Second, in Hudson County Superior Court before Judge Olivieri, Adkins was the "virtual representative" of Jane's estate, as she was both the executrix and a shared beneficiary of Jane's estate with Sogliuzzo, and as such, her interests were represented.

The real issue presented by Sogliuzzo's present Motion, therefore, is the third requirement for res judicata: whether the subject claims grew "out of the same transaction or occurrence as the claim" resolved by the Final State Judgment. Here, Sogliuzzo asks the Court to preclude nine separate tort claims lodged against him by Adkins. A careful review of the transcript of Judge Olivieri's February 6, 2012 ruling, which was the basis for the Final State Court Judgment, makes clear that the narrow issue decided by Judge Olivieri was whether Sogliuzzo had exerted undue influence with regard to Jane's assets and estate. (Tr. of 2/6/12 Hr'g 6:4-8:22.) Ultimately, Judge Olivieri expressly found that Sogliuzzo had exerted undue influence, and awarded damages and pre-judgment interest based upon that finding. (Tr. of 2/6/12 Hr'g 6:4-16:20.)

In light of Judge Olivieri's February 6, 2012 ruling from the bench and the subsequent Final State Court Judgment, this Court concludes that the doctrine of res judicata necessarily precludes Adkins' claim against Sogliuzzo in the Third Amended Complaint for Undue Influence (Count Nine). In that claim, Adkins expressly bases her undue influence allegation on Sogliuzzo's actions related to an account held by Jane with Alex Brown. (Compl. ¶¶ 270-273.) As the transcript makes clear, on February 6, 2012, Judge Olivieri considered and decided that precise claim. (Tr. of 2/6/12 Hr'g 6:4-8:22, Doc. No. 244-43.) As the Final State Court Judgment is sufficient for res judicata purposes, and Adkins has sufficient privity with Jane's estate, it is clear that Adkins' undue influence claim against Sogliuzzo must be precluded.

The narrowness of Judge Olivieri's decision, however, prevents this Court from precluding the other eight claims identified by Sogliuzzo, which run the gamut from conspiracy to conversion. Stated simply, the Court cannot conclude as a matter of law that those diverse and extensively pled claims "grow out of the same transaction or occurrence" as Judge Olivieri's undue influence decision. Therefore, res judicata cannot apply to the other claims. Moreover, the following two salient considerations inform the Court's declination to expand preclusion in this case: (1) as exhibited in Tagayun, it appears that such sweeping preclusion may implicate the New Jersey Entire Controversy Doctrine, N.J. Ct. Rule 4:30A[8]; and (2) the question of whether Adkins could have brought the balance of her claims before Judge Olivieri in the underlying state probate case. The record before the Court renders decisive inquiry into either of those considerations impossible.

Therefore, for the foregoing reasons, the Court will grant Sogliuzzo's Motion for Partial Summary Judgment only as to Adkins' claim against Sogliuzzo in the Third Amended Complaint for Undue Influence (Count Nine). Res judicata does not preclude the balance of claims identified by Sogliuzzo, and to that extent, his Motion for Partial Summary Judgment will be denied.[9]

Although, the Court has not found res judicata to be a bar to several of the claims disputed by Sogliuzzo in his Motion for Partial Summary Judgment, as discussed below, several

[8] In Rycolene Products, Inc. v. C & W Unlimited, 109 F.3d 883, 886-887 (3d Cir. 1997), the Third Circuit stated that the New Jersey Entire Controversy Doctrine is "an aspect of the substantive law of New Jersey", and that statute "and traditional res judicata principles are blood relatives."

[9] The Court's decision also eliminates two of Sogliuzzo's other arguments: (1) that Adkins' claim against him for breach of fiduciary duty as to the estates of Jane and Mary in Count Twenty-Two of the Third Amended Complaint is barred by res judicata; and (2) that Adkins' claim for punitive damages is barred by res judicata. (Sogliuzzo Mot. Br. at pp. 12-13; Doc. No. 244.)

counts will be dismissed on other grounds. The Court will now address additional issues raised by the parties for summary judgment regarding specific counts in the Third Amended Complaint.

### 3. "Attorney Malpractice": Sogliuzzo (Count Three)

In his Motion for Partial Summary Judgment, Sogliuzzo argues that the Third Count in the Third Amended Complaint, which alleges Sogliuzzo committed legal malpractice with regard to the estates of Mary and Jane, must be dismissed. Sogliuzzo presents two supporting arguments: (1) that Adkins has not offered any evidence that Sogliuzzo was functioning as Mary's attorney; and (2) that Adkins' undisputed failure to provide an affidavit of merit pursuant to the requirements of <u>N.J.S.A.</u> 2A:53A-27 is fatal to Adkins' malpractice claim. In opposition, Adkins argues, among other things, that no affidavit of merit is required in this case because the circumstances surrounding Sogliuzzo's alleged malpractice are "common knowledge", and further, that the doctrines of waiver, estoppel, and laches foreclose Sogliuzzo's reliance the requirements of <u>N.J.S.A.</u> 2A:53A-27. This Court concludes that Adkins' sustained failure to file an affidavit of merit is dispositive of this malpractice claim, and will grant summary judgment on that basis for Sogliuzzo.

On March 12, 2009, Adkins filed the initial complaint that gave rise to this case. (Compl.; Doc. No. 1.) That initial complaint contained a claim against Sogliuzzo for attorney malpractice related to the estates of Mary and Jane. (<u>Id.</u> at ¶¶ 224-233.) Today, the operative Third Amended Complaint contains the functionally identical claim against Sogliuzzo for malpractice. (Compl. at ¶¶ 225-234; Doc. No. 214.) Despite that, it is undisputed that Adkins

has never filed an affidavit of merit as is statutorily required in professional malpractice cases in New Jersey. See N.J.S.A. 2A:53A-27.[10]

Adkins' assertion regarding the "common knowledge" exception is unsupported. Under that doctrine, an affidavit of merit may be deemed unnecessary in a professional malpractice case where "'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts.'" Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 394 (2001) (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)). Further, "a plaintiff in a common knowledge malpractice case will not need expert testimony at trial to establish the standard of care or a deviation therefrom." Id.

Here, Adkins' claims against Sogliuzzo do not fit within the "common knowledge" exception as a matter of law. On the face of her Third Amended Complaint, Adkins' malpractice claim asserts that: "[Sogliuzzo] violated trust, duties, obligations, standard of care and ethical standards required of his profession and his position as an officer of the court" (Compl. at ¶ 228, Doc. No. 214); "as the Executor of the Estate of Mary Grimley, John Sogliuzzo charged legal fees without providing any services and without invoices; timesheets; etc."; "as the Executor of the Estate of Mary Grimley and the Estate of Jane P. Sogliuzzo, John Sogliuzzo commingled funds between the Estates and between his attorney business account; failing to keep client money separate from those of his business entirely to the detriment of [Adkins]"; and "John Sogliuzzo as an attorney owed a duty to [Adkins] as she was a beneficiary of both the Estates of

---

[10] The Third Circuit has established that the "New Jersey affidavit of merit statute is substantive state law that must be applied by federal courts sitting in diversity." Chamberlain v. Giampapa, 210 F.3d 154, 161 (3d Cir. 2000).

Mary and of [Jane]." (Id. at ¶¶ 231-32.)  Given the breadth and complexity of Adkins' legal malpractice allegations, it cannot be concluded as a matter of law that the resolution of those claims falls within a lay juror's "ordinary understanding and experience", and does not require "the benefit of the specialized knowledge of experts."  As such, Adkins' arguments under the "common knowledge" exception to the affidavit of merit requirement fail.

Similarly, Adkins' attempt to invoke the equitable doctrines of waiver, estoppel, and laches is unavailing.  Without question, certain of those equitable doctrines have, under different circumstances, been applied to relieve a party of its failure to adhere to the clear requirements of N.J.S.A. 2A:53A-27.  In Knorr v. Smeal, 178 N.J. 169 (2003), the case upon which Adkins largely relies, the New Jersey Supreme Court discussed these equitable defenses within the affidavit of merit context.

In Knorr, which involved a medical malpractice claim, the defendant waited more than fourteen months past the 120-day statutory deadline for the plaintiff to serve an affidavit of merit before filing his own motion to dismiss.  Critically, in Knorr, it appears that the plaintiff's counsel "was under the false impression that his expert's affidavit of merit had been forwarded to the defendant . . . shortly after the statutory deadline had passed, but more than a year before defendant filed his motion to dismiss." Id. at 179-180.  By the time defendant filed its motion, both parties had engaged in extensive discovery, which had "verified the merit of plaintiff's claims". Id. at 177.

Within that context, the Court in Knorr declined to conclude that the defendant had waived his rights, because "the Affidavit of Merit statute places no obligation on a defendant to file a dismissal motion within a set timeframe." Id. at 178.  The Court in Knorr did, however, conclude the defendant was equitably estopped from pursuing dismissal, because "as a result of

defendant's forbearance in filing the dismissal motion, plaintiffs incurred significant expert and deposition costs, as well as emotional stress under the mistaken belief that their cause of action was still viable." Id. at 180. Lastly, the Court in Knorr concluded that the doctrine of laches also barred the defendant's motion, because the defendant "by his inexcusable delay" had caused the plaintiffs to "believe to their detriment that he had abandoned the dismissal motion." Id. at 181. The doctrine of laches was appropriate, because "plaintiffs were harmed by the significant costs and emotional burden borne during fourteen months of discovery." Id.

In this case, the factors that girded the application of the doctrines of equitable estoppel and laches in Knorr are absent. There is no dispute that Adkins has never served an affidavit of merit regarding the legal malpractice claim against Sogliuzzo, and indeed, has offered no explanation for that omission. Further, instead of being a focused malpractice action, the Third Amended Complaint alleges thirty-six discrete causes of action against numerous independent defendants that sound in assorted tort theories. Importantly, in her opposition brief, Adkins does not claim that she was harmed or prejudiced in any substantive way by the timing of Sogliuzzo's affidavit of merit assertion. (Adkins' Opp'n Br. At 10; Doc. No. 250.) Rather, Adkins merely states that Sogliuzzo's "inaction has induced reliance on the part of [Adkins] that one was not required in this case." (Id.) Additionally, whereas in Knorr, the defendant's motion was filed after extensive discovery had "verified the merit of plaintiff's claims", here, the opposite is true and are still not well supported. (See generally Doc. No. 251 at ¶ 104).

Therefore, the doctrine of equitable estoppel, which applies when a defendant "engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment", does not bar Sogliuzzo's Motion. Knorr 178 N.J. 179 (citing Miller v. Miller, 97 N.J. 154, 163 (1984). As noted, Adkins has not

demonstrated, or argued, that she has been harmed by the timing of the Motion. For the same reason, the doctrine of laches, the "core equitable concern" of which is "whether a party has been harmed by the delay", also does not bar Sogliuzzo's Motion. <u>Id.</u> at 181 (citation omitted). Lastly, for the same reasons articulated by the Court in <u>Knorr</u>, the doctrine of waiver does not bar Sogliuzzo's Motion. <u>Id.</u> at 178. To the contrary, in the clear absence of prejudice, the Court perceives no infirmity with Sogliuzzo's decision to raise this issue as part of his Motion, which was filed according to the timing established by the Court.

In conclusion, "'a timely filed affidavit would prevent the risk of later dismissal." <u>Hubbard</u>, 168 N.J. at 301. Adkins' failure to serve Sogliuzzo with an affidavit of merit within the timeframe established by <u>N.J.S.A.</u> 2A:53A-27 must result in the dismissal her claim for legal malpractice against Sogliuzzo. Therefore, the Court grants Sogliuzzo's Motion for Partial Summary Judgment as to Count Three of the Third Amended Complaint.

### 4. "Intentional Infliction of Emotional Distress": Sogliuzzo and Adkins (Count Seven)

Sogliuzzo and Adkins each argue that they are entitled to summary judgment on Adkins' claim against Sogliuzzo for intentional infliction of emotional distress in Count Seven of the Third Amended Complaint. Sogliuzzo claims that Adkins has failed to establish the elements of intentional infliction of emotional distress under New Jersey law. Relatedly, via an after-filed Motion, Sogliuzzo asks the Court to strike the January 3, 2013 Declaration of Brenda Rolander ("Rolander"), a registered nurse and certified nurse practitioner, who opines as to Adkins' injuries ("Rolander Declaration"). (Doc. No. 246.) Sogliuzzo argues that, in the absence of the Rolander Declaration, Adkins has not presented sufficient evidence to proceed on her claim for intentional infliction of emotional distress. Adkins, on the other hand, argues that the Rolander

Declaration should be allowed, and that she should be granted summary judgment as to Sogliuzzo's alleged intentional infliction of emotional distress.

The circumstances and admissibility of the Rolander Declaration will be addressed separately; however, for the reasons that follow, this Court concludes that issues of fact preclude summary judgment for either Sogliuzzo or Adkins on the intentional infliction of emotional distress claim.

Under New Jersey law, "to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Buckley v. Trenton Savings Fund Soc., 111 N.J. 355, 366 (1988) (citation omitted).  With regard to intent, a plaintiff must prove either: (1) the defendant intended both "to do the act and produce emotional distress"; or (2) that the defendant acted "recklessly in deliberate disregard of a high degree of probability that emotional distress would follow." Id.  Next, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (citing Restatement (Second) of Torts, Section 46 comment d.).  Third, "the defendant's actions must have been the proximate cause of the plaintiff's emotional distress." Id. (citation omitted).  Lastly, the plaintiff must suffer emotional distress that is so severe, "no reasonable man could be expected to endure it." Id. (citing Restatement, supra, comment j).

Notably, in Buckley, the New Jersey Supreme Court decided that "the severity of emotional distress raises questions of both law and fact." Id.  As such, "the court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved." Id. (citing Restatement, supra, comment j).  Further, Chief Judge

Simandle has recently noted that, "a determination of a defendant's state of mind can be made only from the 'totality of circumstances' surrounding defendant's conduct, and 'a question of intent, or proximate cause, is ordinarily left to the jury's determination with proper instructions.'" Denisco v. Boardwalk Regency Corp., 2013 WL 179484 at *9 (D.N.J. Jan. 16, 2013) (quoting Wilson v. Parisi, 268 N.J. Super. 213, 633 A.2d 113, 115 (N.J. Super. Ct. App. Civ. 1993).

The totality of the circumstances in this case present clear issues of fact as to whether Sogliuzzo is liable to Adkins for intentional infliction of emotional distress, and therefore, the question must be reserved for a jury. The facts and evidence presented to the Court in connection with the parties' Motions make clear that Adkins' allegations create issues for the trier of fact. Therefore, summary judgment cannot be granted to either Sogliuzzo or Adkins on Count Seven of the Third Amended Complaint.

### *Motion to Strike Rolander Declaration*

On January 18, 2013, after the parties' various dispositive motions were filed, Sogliuzzo filed a Cross-Motion to Strike the Rolander Declaration. (Doc. No. 246.) Rolander, a Virginia registered nurse and certified nurse practitioner, has been Adkins' "primary health provider" since 2008; however, the Rolander Declaration was served upon Sogliuzzo for the first time on January 4, 2013, as part of Adkins' Motion for Partial Summary Judgment. (Sogliuzzo Cross-Mot. Br., Doc. No. 246; Rolander Decl. at ¶¶ 1-5, Doc. No. 245.) Sogliuzzo argues, among other things, that the Rolander Declaration must be stricken because it contains Rolander's expert opinion, which was never disclosed in a timely-filed expert report.

As Sogliuzzo notes, pursuant to Judge Arleo's October 14, 2011 Case Management Order, the last deadline for Adkins to serve an expert report was October 20, 2011. (Doc. No.

206.)  There is no dispute that Adkins did not serve an expert report for Rolander by that date, and indeed, has never filed an expert report for Rolander.  Nor did Adkins identify Rolander as a potential expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(A).  Instead, Adkins argues that service of the Rolander Declaration upon Sogliuzzo for the first time on January 4, 2013 was appropriate, because as Adkins' "primary health provider", an expert report from Rolander is not required under the "treating physician" exception to Fed. R. Civ. P. 26(a)(2)(B).  (Adkins' Reply Br. 1-3, Doc. No. 257.)  Adkins' argument fails for at least two reasons.

First, while "treating 'physicians are not required to submit expert reports when testifying based on their examination, diagnosis and treatment of a patient", Rolander is not a physician.  In re Fosamax, 2013 WL 1558690 at * 11 (D.N.J. Apr. 10, 2013).  Rather, by her own express admission, Rolander is a Virginia registered nurse and certified nurse practitioner.  (Rolander Decl. at ¶ 1; Doc. No. 245.)  In opposition to Sogliuzzo's Cross-Motion to Strike, Adkins identifies no case in this Circuit that extends the "treating physician" exception to any professional other than physicians, and this Court has found none.  On that basis alone, Adkins' reliance on the "treating physician" exception fails.

Additionally, even if Adkins had persuaded the Court that the "treating physician" exception could reasonably be interpreted to cover Rolander, the declaration at issue must be stricken because Adkins failed to timely disclose Rolander as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(A).  Although the Rolander Declaration contains information that is based on her "examination, diagnosis and treatment" of Adkins, which might fall within the "treating physician" exception, it also contains Rolander's unvarnished opinion about the cause and prognosis of Adkins' ailments.  Indeed, Rolander concludes her Declaration by stating:

> I conclude with a reasonable degree of medical probability that the actions of John Sogliuzzo following the death of Jane Sogliuzzo have caused Jane Adkins both physical and emotional harm, such as an increase in the number and severity of seizures and the continuing anxiety attack suffered by Ms. Adkins.

(Rolander Decl. ¶ 12, Doc. No. 245.)

By definition, Rolander's foregoing opinion testimony must "inherently be based on scientific, technical, or other specialized knowledge within the scope of [Fed. R. Civ. P. 702]." Pease v. Lycoming Engines, 2012 WL 162551 at * 12 (M.D.Pa. Jan. 19, 2012). As such, even if the "treating physician" exception were applicable, Fed. R. Civ. P. 26(a)(2)(A) mandates that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703 or 705." Id. Critically, Fed. R. Civ. P. 26(a)(2)(D) establishes that a party must make the foregoing disclosures "at the times and in the sequence that the court orders."

Here, it is indisputable that pursuant to Judge Arleo's October 14, 2011 Case Management Order, all expert discovery closed on December 20, 2011.[11] (Doc. No. 206.) Although Adkins claims Rolander "was identified in Rule 26(a) disclosures as a person likely to have knowledge about the claims in this case", that generic R. 26(a) disclosure does not satisfy the heightened disclosure requirements of Fed. R. Civ. P. 26(a)(2)(C), which are mandatory in this context. (Adkins' Reply Br. 1, Doc. No. 257.)

Therefore, Adkins' service of the Rolander Declaration exceeded the expert discovery deadline in this case by nearly 15 months, and Adkins entirely failed to properly identify Rolander as an expert witness pursuant to the mandates of Fed. R. Civ. P. 26(a)(2). That dual

---

[11] Pursuant to the October 14, 2011 Order, Adkins was to serve expert reports by October 20, 2011, and responding reports were to be served by Sogliuzzo and Torrance by December 20, 2011. (Doc. No. 206.)

failure is unacceptable, and has resulted in clear prejudice to Sogliuzzo. By virtue of Adkins' omissions, Sogliuzzo has been deprived of an opportunity to retain an expert to rebut Rolander's testimony, or to depose Rolander based upon the information in her Declaration. Under these circumstances, the Court's allowance of the Rolander Declaration would be unjust.

In sum, because of Adkins' late service of the Rolander Declaration, and the resulting clear prejudice to Sogliuzzo in the post-discovery stage of this nearly five-and-a-half year old case, the Court will grant Sogliuzzo's Cross-Motion to Strike.[12]

### 5.      "Fraudulent Conveyance": Sogliuzzo and Torrance (Count Eight)

In their respective Motions, Sogliuzzo and Torrance argue that they are entitled to summary judgment on Adkins' claim for fraudulent conveyance lodged against them jointly in Count Eight of the Third Amended Complaint. The Court agrees.

Adkins alleges that Sogliuzzo and Torrance are liable for fraudulent conveyance because: "Adkins is a creditor of the Estate of Mary and the Estate of Jane Sogliuzzo" (Compl. at ¶ 265, Doc. No. 214); "John Sogliuzzo through his actions herein has transferred monies to his wife Gaye Torrance; to himself; to his law firm; and for the benefit of his children for less than adequate consideration" (Id. at 266); and that those "transfers were intentionally made to defraud Jane Adkins and to avoid paying her what she was rightfully due." (Id. at 267.)

As Sogliuzzo correctly notes, New Jersey's Uniform Fraudulent Transfer Act establishes the following with regard to "Transfers fraudulent as to present creditors":

---

[12]      In so deciding, the Court expresses no opinion on the admissibility at trial of fact-based testimony from Rolander in the capacity of a lay witness.

> a. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.
>
> b. A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time, and the insider had reasonable cause to believe that the debtor was insolvent.

N.J.S.A. 25:2-27 a-b.

Applying that statute here, Adkins' claims against Sogliuzzo and Torrance fail for two separate, but equally basic reasons. First, notably, Adkins fails to cite a case in either of her opposition briefs that might suggest the foregoing statute is applicable, and has been applied, to these facts – i.e., in the context of a dispute by beneficiaries of an estate. (Adkins' Sogliuzzo Opp'n Br. 12, Doc. No. 250; Adkins' Torrance Opp'n Br. at p. 7, Doc. No. 252.) The apparent absence of legal authority to support Adkins' claim in itself suggests that summary judgment is appropriate.

Additionally, based upon a commonsense application of Adkins' allegations to the plain language of the statute, Adkins' assertion of fraudulent conveyance is unsupportable in the context of this case. Here, Adkins inaccurately claims that she is a "creditor" of the estates of Jane and Mary. The applicable "debtor" at issue must be the estates of Jane and Mary, from which the allegedly "fraudulent transfers" indisputably flowed. Therefore, Adkins' claim against Sogliuzzo and Torrance on this theory is plainly unsupportable. Moreover, there is no allegation that the estates of Jane and Mary – again, the only logical "debtors" – were ever insolvent, or

were ever made insolvent by the claimed transfers. Insolvency, of course, is an express requirement on the face of the statute.

For these reasons, Adkins' claims against Sogliuzzo and Torrance for fraudulent conveyance are deficient as a matter of law. As such, the Court will grant Sogliuzzo's Motion for Partial Summary Judgment, and Torrance's Motion for Summary Judgment, as to Count Eight of the Third Amended Complaint.

### 6. "Aiding the Commission of a Tort": Torrance (Count Fourteen)

In her Motion for Summary Judgment, Torrance argues that Adkins has failed to establish that Torrance aided the commission of a tort as alleged in Count Fourteen of the Third Amended Complaint.

Under New Jersey law, the elements of aiding and abetting for purposes of civil tort liability are: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." State of N.J. v. Qwest Communications, Intl., Inc., 387 N.J. Super. 469, 484 (App. Div. 2006) (quoting Tarr v. Ciasulli, 181 N.J. 70, 84 (2004)).

The first factor, whether Torrance aided someone that performed an injurious wrongful act, presents an issue of fact. Adkins alleges that Torrance aided Sogliuzzo in committing various torts related to the estates of Jane and Mary. (Compl. ¶¶ 299-307.) As this Court makes clear throughout this Memorandum Opinion, the legality of Sogliuzzo's actions is the central focus of this litigation.

The second factor, general awareness, also presents an issue of fact. Among other things, the evidence in this case indicates that Torrance accompanied Sogliuzzo to the Hoboken House

shortly after Jane's death, and was observed assisting Sogliuzzo remove various documents. Whether or not that action, and various others, proves that Torrance had a "general awareness" that she was participating in an "overall illegal or tortious activity" at the time she "provided the assistance" to Sogliuzzo presents an issue of fact.

The third factor, knowing and substantial assistance in the principal violation is also problematic. As discussed above, the parties do not dispute that Torrance received at least one large check from Mary near the end of Mary's life. Additionally, there is evidence that suggests other checks from the estates of Jane and Mary were written to fund Torrance and Sogliuzzo's children's private school tuition, and that funds removed from the estates of Jane and Mary by Sogliuzzo were ultimately forwarded to Torrance. Therefore, an issue of fact exists as to whether Torrance "knowingly and substantially assist[ed] the principal violation", which in this case, was the removal of assets from the estates of Jane and Mary.

For these reasons, the Court denies Torrance's Motion for Summary Judgment as to Count Fourteen of the Third Amended Complaint.

### 7. "Conspiracy": Sogliuzzo and Torrance (Count Fifteen)

Sogliuzzo and Torrance both argue that Adkins has failed to establish that they engaged in an actionable civil conspiracy as alleged in Count Fifteen of the Third Amended Complaint.

As the Third Circuit has articulated, the tort of civil conspiracy has the following four elements under New Jersey law:

> (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages.

Morganroth & Morganroth v. Norris, McLaughlin & Marcus, 331 F.3d 406, 414 (3d Cir. 2003) (citing Naylor v. Harkins, 27 N.J. Super. 594, 605 (1953). Logically, "some act that is itself a tort must be committed by one of the parties in pursuance of the agreement. Id. (citation omitted). Stated differently, "the gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right of action." Board of Ed. of City of Asbury Park v. Hoek, 38 N.J. 21, 238 (1962). As the New Jersey Supreme Court noted in Hoek, and as Torrance herself acknowledges, "it is well known that the nature of conspiracy is such that more often than not the only type of evidence available to prove the conspiracy is circumstantial evidence." Id. at 239 (citation omitted). Therefore, while "pure speculation" is of course insufficient, "circumstantial evidence will suffice" to find the existence of a civil conspiracy. Id.

For essentially the same reasons discussed above in regard to Adkins' aiding the commission of a tort claim against Torrance, the Court must conclude that questions of fact preclude summary judgment as to the existence of a civil conspiracy between Sogliuzzo and Torrance relative to the estates of Jane and Mary. The evidence adduced in relation to the parties' present Motions, circumstantial or otherwise, clearly present issues of fact at least as to: (1) whether either Sogliuzzo or Torrance (or both) committed an actionable tort with regard to the estates of Jane and Mary; and (2) whether they had a "real agreement" or "confederation with a common design" in doing so.

For these reasons, the Court denies summary judgment to Sogliuzzo and Torrance as to Count Fifteen of the Third Amended Complaint.

### 8. "Theft by Deception": Sogliuzzo and Torrance (Count Sixteen)

28

In their respective Motions, Sogliuzzo and Torrance argue that they are entitled to summary judgment on Adkins' claim for theft by deception lodged against them jointly.

It appears that Adkins has conceded that her claim against Sogliuzzo and Torrance for theft by deception does not exist under New Jersey law, and has tacitly consented to the Court's entry of summary judgment on that claim. In her opposition to Sogliuzzo's Motion, Adkins states that Sogliuzzo "seeks dismissal of count sixteen; [Adkins] does not oppose this portion of the motion." (Adkins' Sogliuzzo Opp'n Br. 20, n. 5, Doc. No. 250.) Similarly, in her opposition to Torrance's Motion, Adkins does not reference her claim for theft by deception. (Doc. No. 252.) As such, count sixteen will be dismissed as withdrawn.

### 9. "Elder Abuse": Sogliuzzo (Count Twenty-Four)

In his Motion for Partial Summary Judgment, Sogliuzzo argues that the Twenty-Fourth Count in the Third Amended Complaint, which alleges that Sogliuzzo committed elder abuse as to both Jane and Mary, must be dismissed. In support thereof, Sogliuzzo argues that there is no private right of action for elder abuse under New Jersey law. This Court agrees, and further, concludes that to the extent any private, civil cause of action for elder abuse did exist under New Jersey law, Adkins' pleadings are wholly insufficient to state a claim.

First, by failing to cite a case in her opposition brief to support the existence of a private cause of action under New Jersey law, Adkins appears to acknowledge that she is asking this Court to endorse the creation of a novel claim. (Adkins' Sogliuzzo Opp'n Br. 20-21, Doc. No. 250.)

Second, to the extent any such hypothetical claim existed, Adkin's bare-bones pleadings are deficient. With regard to Count Twenty-Four, Adkins' substantive pleadings consist of two clauses: "John Sogliuzzo's actions as detailed herein with both Jane P. Sogliuzzo and Mary T.

29

Grimley constitute the tort of elder abuse" (Compl. ¶ 356, Doc. No. 214); and "as a consequence of John Sogliuzzo's actions, [Adkins] has been damaged." (Id. at ¶ 357.) Of course, under Fed. R. Civ. P. 8(a)(2) and 12(b)(6), "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). As such, here, even if a private claim for elder abuse existed under New Jersey law, Adkins' pleadings are plainly insufficient to state a claim and there is no evidence beyond the pleadings.

For these reasons, the Court grants Sogliuzzo's Motion for Partial Summary Judgment as Count Twenty-Four of the Third Amended Complaint.

10. **"Wasting Another's Property or Inheritance": Sogliuzzo (Count Twenty-Six)**

In his Motion for Partial Summary Judgment, Sogliuzzo argues that the Twenty-Sixth Count in the Third Amended Complaint, which alleges that Sogliuzzo "wasted and destroyed" Adkins' inheritance from the estates of Jane and Mary, fails because that cause of action is limited to real property under New Jersey law.

The parties do not dispute that the cause of action pursued by Adkins in Count Twenty-Six is governed by N.J.S.A. 2A:65. In pertinent part, that statute establishes under the section "Action for waste by heir; treble damages", that:

> Any heir may maintain a civil action for the waste or destruction of his inheritance, whether such waste occurred in the lifetime of his ancestor or thereafter. The judgment in such an action shall be for the recovery of the inheritance wasted or its money value if such recovery is impossible, and treble damages.

N.J.S.A. 2A:65-5.

On the face of the controlling statute, therefore, the cause of action that Adkins pursues is not limited to real property, as Sogliuzzo contends.[13] In fact, the term "real property" does not even appear within the text. Further, Sogliuzzo's citation to Cherry v. Cherry, 168 N.J. Super. 386, 389 (L. Div. 1979) for the proposition that N.J.S.A. 2A:65-5 is limited to real property is unpersuasive. In Cherry, which is a New Jersey Superior Court decision, there is no explicit discussion of N.J.S.A. 2A:65-5. Moreover, the focus on real property in Cherry is logical, as that case involved a dispute over real property. Stated simply, Cherry has no apparent bearing upon this matter.

---

[13] This issue was not specifically addressed in the State Court Case.

Because <u>N.J.S.A.</u> 2A:65-5 is not limited to real property by its express terms, and because neither Sogliuzzo's briefing nor the Court's own research has identified support for Sogliuzzo's restrictive construction thereof, the Court denies Sogliuzzo's Motion for Partial Summary Judgment on Count Twenty-Six of the Third Amended Complaint.

### 11. "Undue Influence": Torrance (Count Thirty-Three)

In her Motion for Summary Judgment, Torrance argues that Adkins has failed to establish undue influence regarding certain alleged <u>inter</u> <u>vivos</u> gifts given to Torrance by Mary, as Adkins alleges in Count Thirty-Three of the Third Amended Complaint. The Court disagrees.

Under New Jersey Law, "undue influence generally has been defined as 'mental, moral or physical' exertion which has destroyed the 'free agency of the testator' [or settlor] by preventing the testator [or settlor] 'from following the dictates of his own mind and will and accepting instead the domination and influence of another.'" <u>In re Niles</u> 176 N.J. 282, 299 (2003) (quoting <u>Haynes v. First Nat'l State Bank of New Jersey</u>, 87 N.J. 163, 176 (1981)). As Torrance herself notes, in the context of <u>inter</u> <u>vivos</u> gifts, "a presumption of undue influence arises when the contestant proves that the donee dominated the will of the donor <u>or when a confidential relationship exists between the donor and donee.</u>" <u>Pascale v. Pascale</u>, 113 N.J. 20, 30 (1988) (citations omitted) (emphasis added).

Applying the foregoing precepts here, questions of fact preclude summary judgment for Torrance. Importantly, there is no dispute that Torrance personally received at least one <u>inter</u> <u>vivos</u> gift from Mary: a check for $20,000 in February, 2005. (<u>See</u> Torrance Mot. Br. 25, Doc. No. 242: Adkins' Torrance Opp'n Br. 5, Doc. No. 252). Additionally, Torrance acknowledges that she was active in Mary's later life, and Torrance admits that at times she would "make meals for [Mary] and shop for her." (Torrance R. 56.1 Stm't ¶ 14, Doc. No. 242.)

Drawing all reasonable inferences in favor of Adkins, the Court simply cannot conclude as a matter of law that the undisputed $20,000 _inter_ _vivos_ gift Torrance received from Mary – a significant sum from an elderly woman with limited means near the end of her life – was not the product of undue influence. The tapestry of evidence presented by the parties in conjunction with the present Motions suggests that a reasonable finder of fact would not be foreclosed from deciding that Torrance and Mary shared a confidential relationship. On the present record, the Court cannot decide that the resulting presumption of undue influence, if made, has been rebutted by Torrance as a matter of law.

For these reasons, the Court denies Torrance's Motion for Summary Judgment as Count Thirty-Three of the Third Amended Complaint.

## III. CONCLUSION

For the reasons expressed above, the Banks' Motions for Summary Judgment is **GRANTED** as to Counts Twenty-Nine (Negligence: TD Bank), Thirty (Gross Negligence: TD Bank), Thirty-One (Breach of Fiduciary Duty: TD Bank), Thirty-Four (Negligence: Haven), Thirty-Five (Gross Negligence: Haven) and Thirty-Six (Breach of Fiduciary Duty: Haven); Torrance's Motion for Summary Judgment is **GRANTED** as to Count Eight (Fraudulent Conveyance) and Count Sixteen (Theft By Deception), **AND DENIED** as to Count Fourteen (Aiding the Commission of a Tort), Count Fifteen (Conspiracy to Commit a Tort) and Count Thirty-Three (Undue Influence); Sogliuzzo's Motion for Partial Summary Judgment is **GRANTED** as to Count Three (Attorney Malpractice), Count Eight (Fraudulent Conveyance), Count Nine (Undue Influence), Count Sixteen (Theft By Deception) and Count Twenty-Four (Elder Abuse), **AND DENIED** as to Count Seven (Intentional Infliction of Emotional Distress), Count Thirteen (Conspiracy to Commit a Tort), Count Fifteen (Conspiracy to Commit a Tort),

Count Twenty (Fraudulent Concealment), Count Twenty-One (Intentional Fraud), Count Twenty-Two (Breach of Fiduciary Duty), Count Twenty-Three (Punitive Damages), Count Twenty-Six (Wasting Another's Property or Inheritance), and Count Twenty-Eight (Conversion), and his Cross-Motion to Strike is **GRANTED**; and Adkins' Motion for Partial Summary Judgment as to Count Seven (Intentional Infliction of Emotional Distress) and Cross-Motion for Summary Judgment is **DENIED**.

DATED:      September 30, 2013            <u>s/SUSAN D. WIGENTON, U.S.D.J.</u>

Orig:        Clerk
cc:          Parties
            Magistrate Judge Arleo