**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

―――――――――――――――――――――――  
                                         :  
JANE ADKINS, ET AL.,                     :  
                                         :         Civil Action No. 09-1123 (SDW)  
           Plaintiffs,                   :  
                                         :  
v.                                       :         **OPINION**  
                                         :  
JOHN B. SOGLIUZZO, ET AL.,               :  
                                         :         April 3, 2014  
           Defendants.                   :  
―――――――――――――――――――――――:  

**WIGENTON, District Judge:**

This Court held trial for approximately five days during a two week period, commencing January 21, 2014, in this matter regarding plaintiff Jane Adkins ("Jane Adkins" or "Plaintiff") and defendants John B. Sogliuzzo ("Sogliuzzo") and his wife Gaye Torrance ("Torrance").[1]

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332. Based on the testimony and evidence presented at trial, this opinion constitutes this Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## I.    FINDINGS OF FACT

―――――――――――――――――――――

[1] Trial was held on January 21, January 24, 2014, and on January 27, 2014 to January 29, 2014.

As this matter has been addressed several times by this Court over five years of motion practice and oral argument, this Court will briefly provide its finding of facts and writes primarily for the parties.  This Court makes the following findings:

Plaintiff is the sister of defendant Sogliuzzo, an attorney, and the sister-in-law of his wife Torrance (collectively with Sogliuzzo "Defendants").  Plaintiff and Sogliuzzo are the children of Jane P. Sogliuzzo ("Jane S."). Jane S. and Mary T. Grimley ("Grimley") were first cousins. Plaintiff and Sogliuzzo are referred to as the nephew and niece of Grimley. Both Jane S. and Grimley are deceased.

Grimley was predeceased by her husband and child.  Jane S. was predeceased by her husband, Walter Sogliuzzo (who died in 1999) and one of her three children, W. Gerald Sogliuzzo (who died in 2003).  Jane S. and Grimley were survived by Plaintiff and Sogliuzzo, both of whom are beneficiaries to their estates.  Following the death of Walter Sogliuzzo, his remaining son, Defendant Sogliuzzo, took over the management of his mother's financial affairs.

Jane S. lived at 1228 Bloomfield Street in Hoboken, New Jersey (the "Hoboken House"). In 2002, Grimley fell in her home on Garden Street in Hoboken and her health declined. Grimley fell on the floor of her kitchen and remained unable to move there for at least two days until she was discovered.  Following this incident, there was concern about Grimley's ability to live on her own, so Grimley moved into an apartment in the Hoboken House.

Jane Adkins, Charlie Adkins (husband of Jane Adkins), Sogliuzzo, and Torrance discovered cash in various parts of Grimley's home while cleaning it out during her move to the Hoboken House.   Approximately $70,000 in cash was recovered from Grimley's apartment upon her relocation. Sogliuzzo and Plaintiff. told Grimley that cash was found in her home and

2

Sogliuzzo said he would deposit it in Grimley's bank account at Haven Savings Bank ("Haven" or "Haven Bank").

Once Grimley moved into the Hoboken House, Sogliuzzo managed Grimley's banking, as well as his mother Jane S.'s finances.  Sogliuzzo arranged with Haven to be appointed power of attorney with respect to Grimley's accounts. Paula Ianna ("Ianna"), Sogliuzzo's secretary notarized the power of attorney giving Sogliuzzo authorization for Grimley's accounts, but she never actually witnessed Grimley sign the power of attorney.   Sogliuzzo, who is an attorney, was named as Executor for the estates of both Jane S. and Grimley.

During the period of 2004 to 2006, $321,040.05 in bonds was redeemed from Grimley's account.  Some funds were deposited into a bank account that Torrance shared with her husband Sogliuzzo during that time period.  Some of the deposits were in checks made out to Torrance, of which Torrance claimed not to be aware.  Torrance recalls receiving a check for $20,000 from Grimley dated February 25, 2005, which Torrance indicates was for her children's tuition.

On October 16, 2006, Grimley died at 91 years old.  Plaintiff received a distribution from Grimley's Estate from Sogliuzzo, for an amount that Plaintiff believed was significantly less than that which she was entitled to receive.

Jane S. maintained a checking account and various savings accounts at Hudson United Bank and TD Banknorth (which are predecessors-in-interest of TD Bank) and investment accounts with Deutsche Bank Alex Brown.

Jane S.'s health declined over the years, and on February 29, 2008, Jane S. died at 93 years old.

On March 4, 2008, Plaintiff discussed their mother's estate with Sogliuzzo, who communicated to her that the only assets were about $14,000 in bank accounts and the Hoboken House.  When Plaintiff inquired about their mother's investment accounts, Sogliuzzo told her that they were to be paid to him upon the death of their mother.

On March 13, 2008, Jane S.'s will was probated by Sogliuzzo.  That morning, Plaintiff told Sogliuzzo via email that she had concerns and asked him not to probate the will until they had a chance to speak.  At the time Jane S.'s will was probated, the main asset in the estate was the Hoboken House.  On April 2, 2008, Sogliuzzo and Plaintiff met at Union Station in Washington, D.C.  At the April 2, 2008 meeting, Plaintiff asked Sogliuzzo about irregularities she and her husband discovered concerning the accounts and estates of Jane S.  After an unpleasant discussion, they parted ways with the issues unresolved.

During the summer of 2008, Sogliuzzo gave up his position as Executor of the estate and Plaintiff was appointed Executrix.  Also, per Plaintiff's request, Sogliuzzo ceased to be the Executor of the Grimley Estate.

Starting in 2008, Plaintiff reported experiencing anxiety attacks and frequent seizures. Plaintiff began keeping record of her seizures in June 2008.  Plaintiff's prior medical history included migraines, and in 2003, she had been diagnosed with a brain tumor.  On December 31, 2003, Plaintiff had surgery to remove the tumor, and after the surgery, Plaintiff experienced seizures and numbness.  However, Plaintiff saw an increase in the frequency of her seizures as of 2008.

On September 23, 2008, Plaintiff sued Sogliuzzo for undue influence in the Superior Court of New Jersey, Chancery Division, Probate Part, Hudson County (the "State Court Case").

In the State Court Case, Plaintiff alleged that Sogliuzzo exerted undue influence over the creation and management of an account Jane S. maintained at Deutsche Bank Alex Brown.

In September 2008, Plaintiff, as Executrix, filed suit against Sogliuzzo in New Jersey Chancery Court with claims including undue influence over their mother, Jane Sogliuzzo. On March 13, 2009, Plaintiff filed the initial complaint in this matter.[10]  Subsequently, Plaintiff amended her complaint twice, filing the Third Amended Complaint on January 13, 2012 ("Complaint" or "Compl.").

On July 24, 2009, after Sogliuzzo invoked his Fifth Amendment rights in the State Court Case, the Honorable Thomas P. Olivieri, then Presiding Judge, Superior Court, Hudson County ("Judge Olivieri"), struck Sogliuzzo's answer based upon his unresponsiveness, and default was entered against Sogliuzzo.

On February 6, 2012, following proof hearings on various dates throughout 2011 and 2012, Judge Olivieri found that Sogliuzzo had exerted undue influence over Jane S.  Based upon that finding, on February 23, 2012, Judge Olivieri issued a Final Judgment in favor of the Estate of Jane S. and against Sogliuzzo in the amount of $520,414 ("Judge Olivieri Order").  (*See* Olivieri Order dated Feb. 23, 2012.)  Notably, that Final Judgment included the following components: $224,436 related to transfers and accrued interest from Jane S.'s Alex Brown account; $216,313 related to "checks made payable to John Sogliuzzo or his law practice or the Pingry School" and accrued interest thereon; and $61,150 regarding transfers and accrued interest from "unaccounted for withdrawals from the savings accounts" of Jane S. (*Id.*)  Judge Olivieri also awarded nearly $200,000 in legal fees and costs to various law firms.  Appeals from

---

[10] Initially, Plaintiff's husband, Charles Adkins, was also a plaintiff in this matter but was terminated as of August 3, 2010.

Judge Olivieri's February 23, 2012 Final Judgment were filed by both Sogliuzzo and Jane S.'s Estate. This judgment was affirmed on appeal.

A similar action was filed against Sogliuzzo related to Grimley's Estate in the Superior Court of New Jersey, Chancery Division, Probate Part, Hudson County ("Grimley State Court Case"), but that matter has been stayed pending resolution of this case.  (Judge Velazquez Order dated Sept. 3, 2012.)

## II.    CONCLUSIONS OF LAW

Plaintiff's Complaint filed in this Court, included thirty-six counts based upon New Jersey statutory and common law causes of action against at least six separate named defendants.[11]   During this litigation, this Court issued several letter orders and opinions, the latest opinion being filed September 30, 2013, resolving motions for summary judgment. (Dkt. No. 285.)  Several of the counts and financial defendants were addressed in this Court's opinion dated September 30, 2013, and Plaintiff settled with the remaining financial defendants prior to trial.

The remaining Defendants and the separate claims regarding the estates of Jane S. and Grimley will be discussed below.  As several claims were previously dismissed or addressed, at the time of trial only the following claims remained:  Breach of Fiduciary Duty - Mary T. Grimley (Count One); Breach of Fiduciary Duty - Mary T. Grimley's  Estate (Count Two); Negligence of John B. Sogliuzzo Causing Harm to Jane E. Adkins as to Mary T. Grimley and the Estate of Mary T. Grimley (Count Four); Malicious Misrepresentation Causing Harm (Count

---

[11] Several financial institutions were originally named as defendants, including Deutsche Bank Alex Brown, TD Bank, N.A., and Haven Savings Bank, but were dismissed or settled prior to trial.  H. Thompson Rodman was also a named defendant that was terminated prior to trial.

Six); Intentional Infliction of Emotional Distress by John B. Sogliuzzo Against Jane E. Adkins (Count Seven); Aiding the Commission of a Tort - L. Gaye Torrance (Count Fourteen); Conspiracy to Commit Tort L. Gaye Torrance and John B. Sogliuzzo (Count Fifteen); Conversion Against John B. Sogliuzzo (Count Seventeen); Fraudulent Concealment By Fiduciary John Sogliuzzo (Intervivos Transfers) (Count Nineteen); Fraudulent Concealment Against John B. Sogliuzzo as Fiduciary of Jane P. Sogliuzzo (Count Twenty); Intentional Fraud as to John Sogliuzzo (Count Twenty-One); Breach of Fiduciary Duty - Estates of Mary T. Grimley and Jane P. Sogliuzzo (Count Twenty-Two); Punitive Damages Against John Sogliuzzo (Count Twenty-Three); Wasting Another's Property or Inheritance (Count Twenty-Six); Conversion of Mary T. Grimley's  assets (Count Twenty-Seven); Conversion of Jane P. Sogliuzzo's  assets (Count Twenty-Eight); and Undue Influence On Mary's Intervivos Transfers (Count Thirty-Three).  Only the claims that were unresolved at trial will be discussed herein.[12]

**Claims Regarding Torrance**

At trial only three counts remained against Torrance: 1) Aiding the Commission of a Tort (Count Fourteen); 2) Conspiracy to Commit Tort (Count Fifteen); and 3) Undue Influence on Inter Vivos Transfers (Count Thirty-Three).

First, despite Plaintiff's claims that Torrance was a co-conspirator with Sogliuzzo and exercised undue influence over Grimley, Plaintiff did not provide admissible evidence to support this theory of liability as to Torrance.  Plaintiff's allegations included the redemptions of more than $300,000 in U.S. Savings Bonds belonging to Grimley.  Torrance testified that she had no

---

[12] As several of the counts were recognized as duplicitous during trial, the analysis is organized by related legal claims.

knowledge of various deposits regarding these bonds, redeemed by Sogliuzzo. Torrance's testimony appeared credible, and Plaintiff did not offer any testimony or admissible evidence to the contrary. While this Court does find that Torrance's lack of knowledge about the funds further reflects negatively on Sogliuzzo, no evidence was presented to show culpability by Torrance regarding the disposition of the bonds or their redemption.

In Count Fourteen, Plaintiff alleges that Torrance "knew about deposits [Sogliuzzo] was supposed to have made for [Grimley] of the $70,000 plus in cash recovered while John [ ] and [Plaintiff] cleaned [Grimley's] apartment." (Compl. ¶ 303.) However, at trial Plaintiff did not offer sufficient proofs to this effect or testimony that supported the position that Torrance acted to conspire or had knowledge of any alleged misappropriation of those funds. Further, Plaintiff did not demonstrate that Torrance acted as a conspirator for any of the claims for which she is named. No admissible evidence was offered to demonstrate that Torrance was either involved in or knew of misappropriations or unlawful actions that were allegedly committed by her husband Sogliuzzo. Evidence regarding a shared intent or common purpose to commit a tort was not presented.

While Torrance acknowledged that she received $20,000 as a gift from Grimley in February 2005, which Torrance claims was toward her children's school tuition, Plaintiff has not demonstrated that Torrance exercised undue influence for this single conveyance of funds. Torrance was not in a confidential relationship with Grimley and Plaintiff has not shown that this particular transfer was anything other than a gift to cover school fees.

This Court does not find Torrance liable in this matter.  As such, all of the claims regarding conspiracy will also be dismissed as Torrance was the last named alleged conspirator of Sogliuzzo in this matter.


**Claims Regarding Sogliuzzo**

As a preliminary matter, this Court will address the significance of the fact that Sogliuzzo has asserted his Fifth Amendment privilege in this action.   Further, prior to trial, Plaintiff moved for an adverse inference against Sogliuzzo.  This application was granted.

In *S.E.C. v. Graystone Nash, Inc.*, the defendants invoked the Fifth Amendment privilege, refusing to answer questions during depositions. 25 F.3d 187, 188–89 (3d Cir. 1994).  As a sanction, the District Court precluded defendants from presenting evidence in opposition to the plaintiff's summary judgment motion and granted judgment for the plaintiffs. *Id.* While recognizing that the defendant had the right to the protection of the Fifth Amendment, the Third Circuit noted that invoking that privilege had a prejudicial effect on the adversary. *Id.* at 190. The *Graystone* court reasoned that sanctions had to be tailored to provide equitable treatment to the adversary, as well as accommodating the Fifth Amendment rights of the party invoking the privilege. *Id.* at 192. "[T]he detriment to the party asserting [the privilege] should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." *Id.* Thus, "[a]lthough the privilege is available, prejudice to the other party must be minimized and an equitable resolution adopted." *McMullen v. Bay Ship Mgmt.*, 335 F.3d 215, 218-19 (3d Cir. 2003).  According to the Third Circuit, "the principle that the invocation of the privilege [against

self-incrimination] may not be too 'costly' does not mean that it must be 'costless.'" *Graystone*, 25 F.3d at 191.

In *Baxter v. Palmigiano*, the Supreme Court pointed out that a defendant's silence alone was insufficient to support an adverse decision, but that such silence in conjunction with other evidence against the defendant could support that result. 425 U.S. 308, 317-18 (1976); *see also RAD Servs., Inc. v. Aetna Casualty & Sur. Co.*, 808 F.2d 271, 274 (3d Cir.1986).

In the instant matter, Plaintiff has acknowledged that invoking the Fifth Amendment alone cannot be the sole basis for a finding of liability.  However, Plaintiff argues that sufficient evidence has been put forth to support the allegations, which combined with Sogliuzzo's silence proves his liability on all counts.  The additional evidence Plaintiff relies on includes "financial records of Jane Sogliuzzo and Mary Grimley" and an accounting of his affairs managing their finances.  (*See* Pl.'s Proposed Finding of Facts.)  Although this type of evidence may have been sufficient to support several of the allegations against Sogliuzzo, at trial much of this evidence was not provided in accordance with the Federal Rules of Evidence.[13]  This Court must render its decision based on the provided appropriate admissible evidence.

Estate of Jane Sogliuzzo

The testimony presented, and the documents that were admitted at trial, adequately support the contention that Sogliuzzo asserted undue influence over Jane S. and Grimley.  With respect to the Estate of Jane S., as Judge Olivieri indicated in 2012, it is clear that Sogliuzzo used

---

[13] Plaintiff's forensic accounting expert, Meghan Callen, was not able to testify regarding the accuracy of certain financial records and statements.

undue influence over Jane S. and misappropriated funds related to her estate.[14]   As such, this Court understands the final judgment of more than $500,000 to have been calculated to address this misappropriation.  At trial before this Court, Plaintiff neither demonstrated nor supported a basis to provide additional grounds for liability or damages in excess of this amount regarding the Estate of Jane S.

Other specific claims as they relate to the Estate of Jane S. will be addressed below.

*Intentional Infliction of Emotional Distress*

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish: (1) intentional and outrageous conduct by the defendant; (2) proximate cause; and (3) distress that is severe. *See Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988) (internal citations omitted).  To support this claim a plaintiff must demonstrate that the defendant either intended to do the act to produce emotional distress or "act[ed] recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Id.* (internal citations omitted).  According to the Restatement (Second) of Torts, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, comment d; *see also Zamboni v. Stamler*, 847 F.2d 73, 80 (3d Cir. 1988). This conduct must be the proximate cause of the plaintiff's emotional distress. *See Caputzal v. The Lindsay Co.*, 48 N.J. 69, 77–78, 222 A.2d 513 (1966).

Additionally, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." *Buckley*, 111 N.J. at 367 (internal citations and

---

[14] As previously noted, on February 23, 2012, a final judgment was entered in favor of the Estate of Jane S. and against Sogliuzzo for $520,414 due to misappropriation and undue influence.  (*See* Judge Olivieri Order)

quotation marks omitted).  A plaintiff is not required to prove a physical injury when defendant's conduct is directed at the plaintiff. *See Hume v. Bayer*, 178 N.J. Super. 310, 319 (Ch. Div. 1981). "The severity of the emotional distress raises questions of both law and fact. Thus, the court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved." *Id.* (internal citations omitted).

Plaintiff claims that Sogliuzzo's conduct, with respect to both Jane S. and Grimley's Estates, was the proximate cause of Plaintiff's anxiety attacks and seizures.  Plaintiff allegedly made a contemporaneous record of the anxiety attacks and seizures from 2008 and claims that the following occurred: "at least 31 seizures in 2008; at least 69 seizures in 2009; about 27 seizures in 2010; and at least 31 seizures for the period January through April 2011." (*See* Pl.'s Proposed Finding of Facts 11.)  At trial, expert testimony was not provided to support this claim.

Plaintiff has not substantiated a claim for intentional infliction of emotional distress, as alleged in Count Seven.  First, Plaintiff was not able to provide sufficient proofs regarding her alleged injuries or harms caused by Sogliuzzo's actions.  Second, Plaintiff did not show that the specific health issues from which she suffers were proximately caused by the actions of Sogliuzzo.  As such, Plaintiff's claims for intentional infliction of emotional distress will be dismissed.

*Other Claims*

The other remaining claims that relate to Jane S. include potential damages that have already been addressed by Judge Olivieri's Order and state court ruling where an appropriate sum was determined.  Based on the testimony and evidence presented to this Court at trial, there

is no basis for additional liability or damages regarding the remaining claims against Defendants as to Jane S.  The claim for punitive damages are addressed later in this opinion.

Estate of Mary Grimley

Plaintiff is entitled to a percentage of Grimley's Estate pursuant to Grimley's will. Plaintiff suggests this figure should be 24.8 percent (as a beneficiary under the Grimley will) plus one-half of 24.8 percent (as the beneficiary under Jane Sogliuzzo's will).  This Court has no reason to doubt the accuracy of this figure, but as discussed below, will defer to the probate court's ultimate determinations regarding the appropriate calculations in the Grimley State Court Case.   For the reasons set forth below, this Court finds that with respect to Grimley and the Grimley Estate, Sogliuzzo is liable for claims related to undue influence, breach of fiduciary duty, negligence, fraud, and misrepresentation.

*Undue Influence*

Under New Jersey law, undue influence exists where there has been "mental, moral or physical exertion which has destroyed the [individual's] free agency such that he is prevented from following the dictates of his own mind and will and accept[s] instead the domination and influence of another." *Calmon-Hess v. Harmer*, 904 F. Supp. 2d 388, 394 (D.N.J. 2012) (internal quotations and citations omitted).

In *Pascale v. Pascale*, the Supreme Court of New Jersey held that "a presumption of undue influence arises when the contestant proves that the donee dominated the will of the donor . . . or when a confidential relationship exists between donor and donee . . . ." 113 N.J. 20, 30 (1988) (citations omitted).  Further, "if the presumption of undue influence is applicable, 'the

donee has the burden of showing by clear and convincing evidence not only that 'no deception was practiced therein, no undue influence used, and that all was fair, open and voluntary, but that it was well understood.'" *Oachs v. Stanton*, 280 N.J. Super. 478, 485 (App. Div. 1995) (quoting *Pascale*, 113 N.J. at 31.) Further, the *Pascale* court noted that "[w]hen the donor is not dependent on the donee, . . . 'independent advice is not a prerequisite to the validity of an improvident gift even though the relationship between the parties is one of trust and confidence." *Pascale*, 113 N.J. at 31 (citation omitted).

This Court acknowledges that Sogliuzzo's relationship with Grimley meets the definition of a confidential relationship.

Plaintiff alleged that the savings bonds belonging to Grimley were transferred via unlawful *inter vivos* transfers.  Plaintiff points to the documents and testimony of Mary Perry of Haven Bank to show that from 2004-2006, Sogliuzzo received $321,040.05 from the redemption of Grimley's savings bonds. (Trial Ex. P-64.)   Additionally, Plaintiff alleges that during the period prior to Grimley's death, Sogliuzzo had written checks to himself and to his law practice totaling in excess of $155,000; and that funds in excess of  $41,000 were made out as transfers to Torrance (although Torrance testified that she was not familiar with many of these funds and deposits).  This Court accepts that there were irregularities with the redemption of these bonds. Although the inference is clear, Plaintiff was not able to demonstrate that these bonds were deposited or used by Sogliuzzo.  Plaintiff's testimony regarding the authenticity of Grimley's signature was insufficient to establish whether or not Grimley had signed or authorized Sogliuzzo to sign on her behalf and redeem the bonds.  It is important to note however that in a confidential relationship there is a presumption that *inter vivos* transfers are unlawful. Plaintiffs

may be able to more clearly demonstrate that these funds were misappropriated at a later date if this matter continues in probate court.

Additionally, Sogliuzzo was trusted with the approximately $70,000 in cash recovered from Grimley's apartment when she moved to the Hoboken House, which has not been accounted for by either party. However, at trial Plaintiff did not demonstrate that Sogliuzzo retained the cash for personal use or misappropriated the funds. The evidentiary support to calculate damages for this claim was insufficient at trial, although again the inference of mismanagement or misuse is evident. While this Court finds Sogliuzzo is liable for undue influence, with respect to the calculation of actual damages, this Court will defer to the state probate court which stayed its decision pending resolution of the instant matter.

Plaintiff also charges Sogliuzzo with breach of fiduciary duty to Grimley, conspiracy to commit torts, conversion of Grimley's savings bonds, "intentional fraud", malicious representation, and wasting another's inheritance.[15] These claims are addressed below.

*Breach of Fiduciary Duty*

For a claim for breach of fiduciary duty under New Jersey law, a plaintiff must show: (1) that the defendant had a fiduciary duty to the plaintiff; (2) that the duty was breached; (3) that injury to plaintiff occurred as a result of the breach; and (4) that the defendant caused that injury. *See In re ORFA Sec. Litig.*, 654 F. Supp. 1449, 1457 (D.N.J. 1987). Additionally, pursuant to N.J.S.A. 46:2B-8.13, "an attorney-in-fact has a fiduciary duty to the principal" that requires him "to act within the powers delegated by the power of attorney and solely for the benefit of the principal." N.J.S.A. 46:2B-8.13(a).

---

[15] This Court already addressed the claim for intentional infliction of emotional distress earlier in this opinion as it referred to both Jane S. and Grimley's estates.

Sogliuzzo had a duty to act for the benefit of Grimley and her estate.  This included the duty to maintain accurate books and records and account for all of the financial transactions that he executed under a Power of Attorney. *See* N.J.S.A.  46:2B-8.13(a), (b).  First, the Court notes that the validity of the Power of Attorney for Grimley is in question.  Second, given Sogliuzzo's position as a fiduciary to Grimley and Grimley's Estate, and this Court's finding of undue influence as discussed above, this Court also finds that Sogliuzzo breached his fiduciary duty.

*Negligence*

The defendant's breach of duty is a question of fact for which the plaintiff bears the burden of proving that the defendant's negligence was the proximate cause of the plaintiff's injury.  *Rustay v. Consol. Rail Corp.*, 775 F. Supp. 161, 163 (D.N.J. 1991); *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990); *see also Catto v. Schnepp*, 298 A.2d 74, 76 (N.J. Super. Ct. App. Div. 1972).  The plaintiff must prove by a preponderance of the evidence that the defendant breached its duty.  *Onufer v. Seven Springs Farm, Inc.*, 646 F.2d 46, 47 (3d Cir. 1980).

Count Four includes allegations that Sogliuzzo caused harm to Plaintiff as to Grimley and the Estate of Grimley.  This Court finds that Sogliuzzo did breach a duty to Plaintiff in his capacity as Executor to the Grimley Estate.[16]  As Plaintiff was a beneficiary of the Grimley Estate, and for the reasons discussed herein, it was foreseeable that Plaintiff would be harmed by Sogliuzzo's actions and breach of duties.  As such, this Court finds that Sogliuzzo was negligent and caused harm to Plaintiff as to the Estate of Grimley.[17]  Notably, the probate court in this

---

[16] See discussion on breach of fiduciary duty *inter alia*.
[17] Plaintiff's arguments that Sogliuzzo caused harm to Jane Adkins *as to Grimley* as opposed to the Estate of Grimley were unclear and unsupported during trial.  As such, this Court's finding on negligence is limited only to Jane Adkin's harm as to the Estate of Grimley and not Grimley herself.

16

matter has not addressed the final issues regarding the Grimley Estate, and as indicated, this Court does not address those calculations herein.

*Fraud[18] and Malicious Misrepresentation*

To prevail on a claim of fraud under New Jersey law, a plaintiff must prove that the defendant made "(1) a material misrepresentation of present or past fact (2) with knowledge of its falsity (3) with the intention that the other party rely thereon (4) and which resulted in reasonable reliance by plaintiff." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1182 (3d Cir. 1993) (citing *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619 (1981)).

The elements of a claim for misrepresentation are similar and include the following: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610, 691 A.2d 350 (1997).

In the instant matter, Sogliuzzo clearly made statements regarding Grimley, the Estate of Grimley, and Plaintiff's share in the estate that were material and inaccurate, which as executor, he had to know were false.  These misrepresentations were meant to be relied upon and were in fact relied upon.  As a result, Grimley's Estate was reduced and Jane Adkins suffered damages. However, the calculation of those damages was not sufficiently shown at trial.  Thus, while this Court does find Sogliuzzo liable for fraud and misrepresentation it does not calculate the resulting damages.

---

[18] This discussion also applies to the similar claim for fraudulent concealment.

Further, as discussed below, while this Court finds Sogliuzzo is liable for claims related to undue influence, breach of fiduciary duty, negligence, fraud, and misrepresentation,[19] it does not find that Plaintiff has proven conspiracy, conversion, waste of inheritance or punitive damages.[20]

*Conspiracy*

Civil conspiracy requires the following under New Jersey law: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus*, 331 F.3d 406, 414 (3d Cir. 2003) (internal citations omitted).

Prior to trial, this Court denied summary judgment to Sogliuzzo and Torrance regarding the conspiracy counts, as there were issues of fact that needed to be addressed. As this Court does not find Torrance liable for the claims brought against her, the related conspiracy claims against Sogliuzzo will be dismissed.

*Conversion*

"Under New Jersey law, '[c]onversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property.'" *Peloro v. United States*, 488 F.3d 163, 173-74 (3d Cir. 2007) (citing *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir.1990); *Huffmaster v. Robinson*, J.A., 221

---

[19] This includes, in relevant substance regarding Grimley, the following counts: One (breach of fiduciary duty), Two (breach of fiduciary duty), Four (negligence), Six (malicious misrepresentation), Nineteen (fraudulent concealment), Twenty-One (intentional fraud), Twenty-Two (breach of fiduciary duty), and Thirty-Three (undue influence). As noted at trial, Count Two is duplicitous of Count Twenty-Two regarding the Grimley Estate.

[20] Any other counts not specifically addressed herein are resolved in accordance with this opinion by the related legal claims.

N.J. Super. 315, 323, 534 A.2d 435 (Law Div.1986) (quoting *Life Ins. Co. of Va. v. Snyder*, 141

N.J. Super. 539, 545, 358 A.2d 859 (App.Div.1976) ("Conversion is 'the wrongful exercise of

dominion and control over the property of another in a manner inconsistent with that other

person's rights.'").   Accordingly, the elements of common law conversion are the existence of a

property right belonging to the plaintiff and the wrongful interference with that right by

defendant. *See McAdam*, 896 F.2d at 771.

At trial, Plaintiff demonstrated that Sogliuzzo misappropriated funds, violated certain

duties, perpetrated fraud and misrepresentation, but did not present sufficient admissible

evidence regarding what Sogliuzzo did with the majority of the funds.   Thus, the Court does not

find Sogliuzzo liable for conversion (Count Seventeen).

*Wasting Another's Inheritance*

Pursuant to N.J.S.A. 2A:65,

> Any heir may maintain a civil action for the waste or destruction of
> his inheritance, whether such waste occurred in the lifetime of his
> ancestor or thereafter. The judgment in such an action shall be for
> the recovery of the inheritance wasted or its money value if such
> recovery is impossible, and treble damages.

N.J.S.A. 2A:65-5.

For similar reasons to those articulated in the Court's analysis of the claims regarding

conversion, this Court does not find Sogliuzzo liable for, wasting another's inheritance (Count

Twenty-Six).   Further, to the extent that there may be some basis to support a contrary finding,

this Court notes the persuasive arguments presented regarding Plaintiff and the unclean hands

doctrine. Plaintiff, through use of legal counsel and the consulting company ACI (of which her

husband is part owner), spent a significant amount of money from the Estate of Jane S. which is

surprising and disturbing.  As discussed below, while this Court does not ultimately find that the arguments under the unclean hands doctrine lead to a conclusive finding against Plaintiff, they certainly speak to the waste of the inheritance which both Plaintiff and Sogliuzzo may have participated in to some extent.

*Unclean Hands*

Sogliuzzo argues that regardless of the evidence and testimony provided by Plaintiff, Plaintiff should not be entitled to a judgment on the basis of the unclean hands doctrine. Sogliuzzo points to what appears to be excessive legal and consulting fees accrued by Plaintiff in this matter.

The unclean hands doctrine is an equitable principle that "a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." *Faustin v. Lewis*, 85 N.J. 507, 511 (1981). A court's decision to invoke the unclean hands doctrine is discretionary. *See Borough of Princeton v. Bd. of Chosen Freeholders of Cnty. of Mercer*, 169 N.J. 135, 158 (2001) (citing *Heuer v. Heuer*, 152 N.J. 226, 238 (1998)).  According to the Supreme Court, a defendant may only assert an unclean-hands defense if the alleged conduct has a direct, immediate, and necessary relationship to the plaintiff's claims. *See, e.g., Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933) ("[T]he maxim requiring clean hands [applies] only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.")

Further, "[t]o prevail on an unclean hands defense, the defendant must show fraud, unconscionability, or bad faith on the part of the plaintiff." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 377 n.7 (3d Cir. 1992) (citing *Castle v. Cohen*, 676 F.Supp. 620, 627

(E.D.Pa.1987), aff'd in part and vacated in part on other grounds, 840 F.2d 173 (3d Cir.1988)). Such a showing requires a defendant to establish that the plaintiff is engaged in a willful act and that the conduct be "shocking to the integrity of the Court." *Gaudiosi v. Mello*n, 269 F.2d 873, 882 (3d Cir. 1959) (stating that the doctrine applies to conduct that "shock[s] the moral sensibilities of the judge") (internal quotation marks omitted); *see also Keystone*, 290 U.S. at 245.

Prior to and during the course of the litigation, Plaintiff has expended a considerable amount of money primarily from the Estate of Jane S.  The consulting fees were paid largely to ACI, of which Charles Adkins is a primary owner.  Judge Olivieri, in the State Court Case, even noted that he was "appalled" that "pretty much on the day she was appointed as the fiduciary. . . [Plaintiff] wrote checks in excess of $150,000 to ACI, a company owned by her husband…" (Tr. Judge Olivieri Decision, Feb. 23, 2012, Tr. 8:24-9:2.)  In total, it appears that $276,447.33 has been paid to ACI over the course of this litigation, and $148,173.00 to her previous attorney Mark Miller and his firm; and $241,850.00 to current counsel Dennis Gleason and his firms (of which it appears the probate court only allowed $122,077.30 to date).  Judge Olivieri further acknowledged that Plaintiff's failure to obtain the state court's approval prior to the issuance of such substantial funds was a "bad move." (*Id.* at 15:21.)

This Court is disturbed by the amount of money that has been spent by Plaintiff on legal counsel and consulting fees during this litigation from the Estate of Jane S., especially given the nature of the claims.  However, Sogliuzzo did not demonstrate that Plaintiff's conduct was willful.  While Sogliuzzo has brought into question Plaintiff's judgment and that of her advisors,

this Court does not find that the doctrine of unclean hands prohibits Plaintiff's recovery in this matter. It is however a factor for consideration.

*Punitive damages*

Punitive damages are awarded as punishment or deterrence for particularly egregious conduct. *See Intermilo, Inc. v. I.P. Enterprises, Inc.*, 19 F.3d 890, 893 (3d Cir. 1994); *Leimgruber v. Claridge Assocs.*, 73 N.J. 450, 454 (1977); *DiGiovanni v. Pessel*, 55 N.J. 188, 190, 260 A.2d 510 (1970); *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 48, (1984). As a result, "punitive damages serve to express the community's disapproval of outrageous conduct", and are awarded to punish the wrongdoer and deter others from similar conduct in the future. *Fischer v. Johns-Manville Corp.*, 103 N.J. 643, 657 (1986); *see, e.g.*, *Intermilo*, 19 F.3d at 893; *Nappe*, 97 N.J. at 48-49, 477 A.2d 1224; *Leimgruber*, 73 N.J. at 454.

Punitive damages are determined from the perspective of the alleged wrongdoer. *Cappiello v. Ragen Precision Indus., Inc.*, 192 N.J. Super. 523, 532 (App. Div. 1984) (quoting *Bartolo v. Boardwalk Regency Hotel Casino Inc.*, 185 N.J. Super. 540, 544 (Law Div. (1982)). Under New Jersey law, "[t]o warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard of the rights of another." *Intermilo*, 19 F.3d at 893 (3d Cir. 1994) (citing *Nappe*, 97 N.J. at 37).

An award of punitive damages requires "'something more than the mere commission of a tort.'" *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 196 (3d Cir.1992) (quoting *W. Prosser, Handbook on the Law of Torts* § 2, at 9–10 (2d ed. 1955). "There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive

22

on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that his conduct may be called wilful or wanton." *Intermilo*, 19 F.3d at 893 (3d Cir. 1994) (citing *Nappe*, 97 N.J. at 49-50).

In the instant matter, punitive damages, as requested in Count Twenty-Three regarding both Jane S. and Grimley, are not appropriate.  Plaintiff claims to be entitled to punitive damages based on "(1) the personal emotional harm [Sogliuzzo] caused her by virtue of his eight year scheme to steal hundreds of thousands of dollars from their elderly mother and elderly cousin; and (2) malicious conduct with respect to [Jane S.] and [Grimley] and his efforts to willfully steal and conceal [Plaintiff's] rightful share of inheritance from such estate."  (*See* Pl.'s Proposed Finding of Facts 11.)  However, Plaintiff has not shown that Sogliuzzo's conduct was so outrageous, "wantonly reckless" or filled with malice as to warrant punitive damages.

## III.    CONCLUSION

For the reasons set forth above, this Court finds in favor of Plaintiff regarding liability for claims related to undue influence, breach of fiduciary duty, negligence, fraud, and misrepresentation.

<u>s/SUSAN D. WIGENTON, U.S.D.J.</u>

Orig:         Clerk
cc:           Parties
              Magistrate Judge Arleo

23